BULLITT, MILLER & Co. *v.* HEWITT, NORTON & Co.

| 11 | 327 |
| 44 | 245 |

| 11 | 327 |
| 46 | 51 |

| 11 | 327 |
| 108 | 50 |

Plaintiffs sue to recover back the amount of a bill of exchange, which they had accepted and paid. *By the Court:* Plaintiffs, having paid the bill to defendants, cannot recover, unless they have established their allegation that there was a material alteration in the bill, by which they were defrauded out of their money. A mere alteration is not enough. They must show that it was such a fraudulent alteration in the substance of their contract as, *per se,* to destroy the obligation resulting from it.

APPEAL from the Second District Court of New Orleans, *Morgan,* J.
*Miller* and *Elmore & King,* for plaintiffs and appellants. *Benjamin, Bradford & Finney,* for defendants.

SPOFFORD, J. We do not think the defendants stand precisely in the position of *Mitchell,* from whom they received the bill accepted by the plaintiffs.

*Mitchell* owed the defendants an antecedent debt larger than the bill. He sent the bill to them, before its maturity, with instructions to collect and place proceeds to the credit of his account. Thenceforward they had an interest in the bill under these instructions.

Their statement that they held it on account of *Mitchell,* and would be liable to him for failing to protect it, does not put them in the position of mere agents without an interest. They would certainly have been compelled to credit him with the amount of the bill should it be lost by their *laches,* even though they had taken it as collateral security.

But however it may be, the plaintiffs having paid the bill to the defendants, cannot recover, unless they have established the allegation that there was a material alteration in the bill, by which they were defrauded out of the money. A mere alteration is not enough. They must show that it was such a fraudulent alteration in the substance of this contract as, *per se,* to destroy the obligation resulting from it. It will not answer for them to bring in other considerations, such as that they were accommodation acceptors, acceptors for a special purpose, that they have been disappointed in receiving shipments to meet the bill, etc., and thus to cloud the real issue made by their pleadings.

They sue in repetition of money paid to the defendants in error, upon amounts, under their allegations, to a forged endorsement of a bill which they had accepted.

The want of consideration is, in our judgment, wholly irrelevant to this issue. The plaintiffs trusted *Walker,* the drawer, and *Walker* alone. They choose to accept his bill without funds in hand, upon the faith that he would reimburse them. They have paid the bill to the defendants, and it matters not if, by so doing, they have lost their money, unless they have lost it by a forgery, that is, by a material alteration made with intent to defraud, and which in fact did defraud them.

It appears to us that there was an absence both of a fraudulent intent and of a fraud in fact, in making the alleged alteration.

*Walker* drew the bill to the order of himself, and it was so accepted. After the word "myself" there was a blank space left, sufficient for the insertion of an ordinary name.

*Walker* first negotiated the bill to a man named *C. J. Wilson,* by special endorsement. After a time, *Wilson* returned the bill to him, with his own endorse-

BULLITT
v.
HEWITT.

ment in blank thereupon, the negotiation between them having assumed another form. *Walker* then, it seems, erased his own special endorsement to *Wilson*. Afterwards, having entered into a large contract with *John S. Mitchell*, which obliged him to make certain advances, he negotiated this bill absolutely to *Mitchell*. In so doing he wrote immediately over the unerased blank endorsement of *C. J. Wilson* the words: "Pay to the order of *John S. Mitchell*." *Walker* swears that this was done in good faith, for the purpose of effecting a transfer of the bill to *Mitchell*, and that he supposed he had so transferred it. Whether from ignorance or inadvertance, he thus left the bill which he had transferred *bona fide* to *Mitchel* without his own endorsement. *Mitchell*, then, to show the true meaning of the parties, inserted the name of " *C. J. Wilson* " in the blank space after the word " myself," upon the face of the bill. This is what is charged by the plaintiff to be a forgery.

But it effected precisely what the parties, *Walker* and *Mitchell* intended to do, and what the former thought he had done. Where, then, was the fraud? The insertion of this word by *Mitchell* was incautious and improper, it may be, but if its sole effect was to carry out the design and contract of *Walker* and *Mitchell*, the only parties interested *quoad hoc*, we cannot see how *Bullitt, Miller & Co.* have been defrauded or can complain of the act. It is only by mixing with this issue (which is the only issue in the case) matters connected with the consideration of the acceptance and that of its transfer, which are quite foreign to the issue, that a serious doubt can be raised as to the rights of the present parties.

*Walker*, as the drawer of the bill, is as much bound to the plaintiffs as if he had really endorsed it, as he intended to do.

If any liability were sought to be fastened on *Wilson*, as endorsee, a very different question would be presented.

But the plaintiffs have paid their acceptance in favor of *Walker*, or order, to the endorsees of a person to whom *Walker* really transferred it. We are not satisfied that they have made out a case for the recovery of money as paid in error upon a forged endorsement.

The judgment is, therefore, affirmed, with costs.